IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DALLAS WIENS,                            §
                                         §
        Plaintiff,                       §
                                         §
vs.                                      §
                                         §   Civil Action No. _____
BARCROFT MEDIA LIMITED d/b/a             §
BARCROFT MEDIA, LTD. and/or              §
BARCROFT U.S.A.,                         §
                                         §
        Defendants.                      §

## APPENDIX TO NOTICE OF REMOVAL

        Pursuant to Rule 81.1 of the Local Rules of the Northern District of Texas, Defendant

Barcroft Media Limited d/b/a Barcroft Media Ltd. and/or Barcroft U.S.A. submit the attached

Appendix to Notice of Removal.

### TABLE OF CONTENTS

| Tab | Date | Document |
|-----|------|----------|
| 1.  |      | State Court Civil Docket Sheet and Transaction Sheet |
| 2.  | 4/12/11 | Plaintiff's Application for Temporary Restraining Order and Temporary and Permanent Injunction and Original Petition |
| 3.  | 4/12/11 | Temporary Restraining Order |

Respectfully submitted,

By: /s/ Robert P. Latham
    Robert P. Latham
    State Bar No. 11975500
    Ryan D. Pittman
    State Bar No. 24060428
    JACKSON WALKER, LLP
    901 Main Street, Suite 6000
    Dallas, Texas 75202
    Telephone: (214) 953-6000
    Facsimile: (214) 953-5822
    Email: blatham@jw.com
    Email: rpittman@jw.com

    Amanda L. Bush
    State Bar No. 24042161
    JACKSON WALKER, LLP
    777 Main Street, Suite 2100
    Fort Worth, Texas 76102
    Telephone: (817) 334-7269
    Facsimile: (817) 334-7290
    Email: abush@jw.com

**ATTORNEYS FOR DEFENDANTS
BARCROFT MEDIA LIMITED
D/B/A BARCROFT MEDIA LTD.
AND BARCROFT U.S.A.**

## CERTIFICATE OF SERVICE

This is to certify that on the 20th day of April 2010, a true and correct copy of the foregoing document was served as indicated below:

*Via Certified Mail and Facsimile:*
Lisa H. Jamieson
Shannon, Gracey, Ratliff & Miller, LLP
777 Main Street, Suite 3800
Fort Worth, Texas 76102
Facsimile: (817) 336-3735

    /s/ Robert P. Latham
    Robert P. Latham

# TAB 1.

# Civil Docket

**Discovery: 3**

**096-252218-11**

Cause Of Action: OTHER CIVIL, TEMP RESTRAINING ORDER/INJUNCTION

| Date Filed | NAMES OF PARTIES | ATTORNEYS |
|---|---|---|
| 04/12/2011 | DALLAS WIENS | JAMIESON, LISA H |
| | | 777 MAIN ST |
| Jury | | SUITE 3800 |
| Fee $ | | FORT WORTH, TX 76102 |
| | vs. | BarID: 105614007X   Ph (817)336-9333 |
| Paid | | SHANNON, GRACEY, RATLIFF & MILLER, LLP   PLTF |
| By | BARCROFT MEDIA LIMITED, ET AL | |

| Date of Orders | ORDERS OF COURT | Was Steno Used? |
|---|---|---|
| 4-12-11 | April TRO, etc. | |

A CERTIFIED COPY

ATTEST. 4. 20. 11

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: _____
DEPUTY

096-252218-11

```
JIMSGTM8              TARRANT COUNTY DISTRICT CLERK'S OFFICE        Page:    1
                      ALL TRANSACTIONS FOR A CASE                  Date: 04/20/2011
                                                                   Time: 10:31
```

| | |
|---|---|
| Cause Number: 096-252218-11   Date Filed: 04/12/2011 | |
| DALLAS WIENS                               v          BARCROFT MEDIA LIMITED, ET AL  s | |

Cause of Action: OTHER CIVIL, TEMP RESTRAINING ORDER/INJUNCTION
Case Status·····: PENDING

| Filemark | Description | | Fee Total |
|---|---|---|---|
| 04/12/2011 | APPL FOR TRO & TEMP & PERM INJ & ORIG PET | NI | 249.00 |
| 04/12/2011 | COURT COST (PAID) trans #1 | Y | 249.00 |
| 04/12/2011 | CIT Cert. Mail Sec of St-ISSUED ON BARCROFT MEDIA | N | 58.00 |
| 04/12/2011 | CIT Cert. Mail Sec of St-ISSUED ON BARCROFT MEDIA | N | 58.00 |
| 04/12/2011 | COURT COST (PAID) trans #4 | Y | 58.00 |
| 04/12/2011 | COURT COST (PAID) trans #3 | Y | 58.00 |
| 04/12/2011 | NOTICE, T.R.O., CERTIFIED MAIL | NA | 58.00 |
| 04/12/2011 | NOTICE, T.R.O., CERTIFIED MAIL | NA | 58.00 |
| 04/12/2011 | COURT COST (PAID) trans #8 | Y | 58.00 |
| 04/12/2011 | COURT COST (PAID) trans #7 | Y | 58.00 |
| 04/12/2011 | Cert. of Conference | I | 0.00 |
| 04/12/2011 | *TEMP RESTRAINING ORDER* (HRG 4/21/11 @ 9AM) | IM | 0.00 |
| 04/12/2011 | CASH BOND --FIRM CHECK ACCEPTABLE PER ORDER | Y | 250.00 |
| 04/12/2011 | NOTICE, T.R.O., CERTIFIED MAIL | NA | -58.00 |
| 04/12/2011 | NOTICE, T.R.O., CERTIFIED MAIL | NA | -58.00 |
| 04/12/2011 | NOTICE, T.R.O., SECRETARY OF STATE, CERT MAIL | NA | 58.00 |
| 04/12/2011 | NOTICE, T.R.O., SECRETARY OF STATE, CERT MAIL | NA | 58.00 |

Total Number Of Records Printed:     17

# TAB 2.

Cause No. **096 252218 11**

| | | |
|---|---|---|
| DALLAS WIENS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| BARCROFT MEDIA LIMITED D/B/A | § | |
| BARCROFT MEDIA, LTD., and/or | § | |
| BARCROFT U.S.A. | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION AND ORIGINAL PETITION

COMES NOW DALLAS WIENS ("Plaintiff"), complaining of BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. ("Defendant") and hereby files this his Application for Temporary Restraining Order and Temporary and Permanent Injunction and Original Petition, and would respectfully show the Court as follows:

### I.

### Discovery Control Plan

Plaintiff intends to conduct discovery under Level 3 of Rule 190.1 of the Texas Rules of Civil Procedure.

## II.

## Venue and Jurisdiction

This Court has jurisdiction and venue of this cause because a substantial part of the actions in question took place in Tarrant County, Texas. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Further, Plaintiff is a resident of Tarrant County, Texas. Additionally, the amount in controversy and the relief sought herein is within the jurisdictional limits of this Court.

## III.

## Parties

1.      Plaintiff, DALLAS WIENS, is an individual residing at 6421 Locke Avenue, Fort Worth, Tarrant County, Texas 76116.

2.      Defendant, BARCROFT MEDIA LIMITED, a foreign media company whose registered office in the United Kingdom is 2 Churchill Court, North Harrow, Middlesex HA2 7SA, United Kingdom is doing business in the United States as BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A., and maintains a home office in New York at 989 Avenue of the Americas (6th), New York, New York 10018. Defendant may be served by serving three copies of the process on the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from Defendant's business in this state. *See* TEX. CIV. PRAC. & REM. CODE §§17.044(b), 17.045. Upon service of process on the Texas Secretary of State, the Texas Secretary of State is requested to provide notice to BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. by mailing a copy of the process via registered mail to Defendant at its registered office at 2 Churchill Court, North Harrow, Middlesex HA2 7SA,

---

United Kingdom and also via certified mail, return receipt requested, to Defendant at its New York office at 989 Avenue of the Americas (6th), New York, New York 10018. In the alternative, Plaintiff reserves the right to have Defendant served by any other method that is authorized by this Court and not prohibited by the laws of the United Kingdom.

## IV.

### Background Facts

1.      On November 13, 2008, while painting the exterior of Ridglea Baptist Church in Fort Worth, Texas, Plaintiff Dallas Wiens came in direct contact with a high voltage power line, burning his face to the skull in a tragic and life-altering accident that blinded him, left him in a coma for three months, and severely disfigured his face. Plaintiff subsequently endured more than twenty surgeries to save his life and cover the destroyed portion of his face, but even then he was left without lips, eyes, nose or sensation in the tissue that remained on his face. After an extensive medical, financial and psychological qualifying process over many months, Plaintiff qualified to be placed on the face transplant list at Brigham & Women's Hospital in Boston, Massachusetts.

2.      Defendant is a media company based in the United Kingdom, but maintains an office in New York, City. According to Defendant's website, among other things, Defendant publishes sensational tabloid articles with titles such as "I Starved Myself For Model Look," "World's Oldest Doctor" and "Stripper Mum and Daughter." Defendant began contacting Plaintiff, who lives with his grandparents, Sue and Del Peterson, in Fort Worth, Texas, on or about January 28, 2010 asking Plaintiff for "exclusive international rights" to cover his story and take photographs and footage of him and his family for a documentary. Plaintiff repeatedly denied Defendant's requests and made it clear that Plaintiff did not want Defendant to have exclusive rights to his story or image. Plaintiff informed Defendant that he was represented by a Texas attorney, Lory Moore,

and when Defendant's agent, Isla Harvey, contacted Ms. Moore concerning their request, Ms. Moore further reiterated that Mr. Wiens would not be granting exclusive rights in the immediate future.  Ms. Moore additionally referred Ms. Harvey to a respected public relations firm in Washington, D.C., who had agreed to represent Plaintiff in all media matters on a pro bono basis. A representative for the public relations firm once again informed Ms. Harvey that Mr. Wiens would not be granting exclusivity in media requests, but that Defendant's request would be kept in consideration.

3.      In June 2010, after months of fruitless requests and failed attempts to get the broad agreement Defendant wanted, and despite being aware that Plaintiff was represented by counsel and a public relations firm, Defendant tried a new tactic.  Defendant told Plaintiff that it wanted to publish a heartwarming human interest story about Plaintiff in the December or holiday issue of a British women's magazine and asked Plaintiff if Defendant could have **limited** access to take some pictures of Plaintiff and interview him and his family for this purpose.  Defendant represented that it knew Plaintiff was having difficult times financially, and it would be in Defendant's best interest to do the agreement immediately.  In exchange, Defendant represented that it would pay Plaintiff $1,500.00 and provide Plaintiff with copies of all of the photographs, footage, and interview material. Defendant also represented that Plaintiff could review all of this material before it was published.

4.      Plaintiff told Defendant that it would only have access to Plaintiff for this limited purpose, as stated in Paragraph 3, until December 31, 2010, and that Plaintiff was not granting Defendant any kind of exclusive rights, international or otherwise, to his story or image. As such, Defendant sent a one page document to Plaintiff's home in June 2010.  Unable to read the document, Plaintiff asked his grandfather to read the purported contract to him.  No attorney

reviewed this document or consulted with Plaintiff. Believing that he was signing an agreement for the limited purposes and limited time frame described above and for consideration of $1,500.00 and the copies of as well as the opportunity to review the photographs, video footage, and interview material, Plaintiff signed the document and returned it to Defendant. Plaintiff does not have a copy of the document, and, despite requests from Plaintiff and his attorneys, Defendant has not produced a copy of this June 2010 paper. This is the only document Plaintiff ever signed for Defendant.

5.      Seemingly pursuant to the June 2010 purported contract, Defendant came to Plaintiff's home, interviewed Plaintiff, and took video footage of Plaintiff and his family on November 23, 2010. At this video and interview session, Defendant's representative, Isla Harvey, presented numerous additional contracts and repeatedly hounded Plaintiff to sign them. Plaintiff refused and told Defendant's representative he would not sign any contracts without his attorneys reviewing the contracts and **did not sign anything on November 23, 2010**. Defendant displayed the above documents and Plaintiff stated his refusal to sign any of them in front of multiple witnesses.

6.      Defendant left the November 23, 2010 photo shoot with video footage of Plaintiff and his family and personal interview information for a story in the purported women's magazine. Defendant also hired a free lance photographer who came and took photographs of Plaintiff for the purported women's magazine article on a different day. Although Plaintiff fully performed his obligations under the purported June 2010 contract, Plaintiff has not been paid the $1,500.00 he was promised, has not received copies of the photographs, video footage, or interview materials, and has not been given the opportunity to review any such material before publication. Further, Defendant has published at least one photograph of Plaintiff and his daughter, obtained by Defendant's photographer, on Defendant's website.

7.      In March 2011, in a sixteen hour procedure involving thirty-two surgeons, countless hospital staff and support personnel, and the original surgeon from Parkland Hospital who initially saved Plaintiff's life following his devastating electrocution, Plaintiff received a full face transplant at Brigham and Women's Hospital in Boston, Massachusetts.  This was a ground-breaking surgery, as it is the first full face transplant ever attempted in United States history, and only the second worldwide.  This surgery is of critical importance, not only to Plaintiff and his family on a personal level, but also to the international medical community and the United States Department of Defense who has invested 4.5 million dollars to pay for Plaintiff's surgery as part of an initiative to fund medical procedures for soldiers injured in war.

8.      Despite the fact that Plaintiff's procedure is history-making and thus highly experimental and intrinsically high risk, Defendant has continued to hound and bother not only Plaintiff, but his grandparents, attorneys, hospital staff, and the Washington D.C. public relations firm who is handling Plaintiff's publicity and media contracts on a pro bono basis.  Shockingly, within hours of the initial press conference announcing the ground-breaking surgery, Defendant's agents were calling and texting Plaintiff's personal cell phone.  Still under sedation from his surgery, Plaintiff answered one of the initial calls, but subsequently informed his attorney, Ms. Moore, of Defendant's distressful actions and requested that Defendant not contact him any further. Despite Plaintiff's refusal to take Defendant's calls, and in blatant disregard of Plaintiff's attorney's demand that Defendant no longer contact Plaintiff or his family, Defendant's agents have continued to call and text Plaintiff and his family multiple times daily in the days following Plaintiff's surgery. Defendant has continued to be intrusive and demanding, despite the fact that dozens of national and international media outlets have respected Plaintiff's and his doctors' and advocates' requests to give Plaintiff privacy during this critical recovery time.

9.       Specifically, since Plaintiff was admitted to Brigham and Women's Hospital for the face transplant, Defendant's representatives have been bothering and harassing the hospital staff and Plaintiff and his family demanding access to Plaintiff while he is in the hospital so that Defendant can publish his story. At one point, Defendant federal expressed a consent form, attached as Exhibit "A" hereto, for Plaintiff to sign. Defendant has used every tactic imaginable to try and gain access to Plaintiff. Defendant now claims that it has an exclusive contract to publish Plaintiff's story and produced a copy of the document attached as Exhibit "B" and dated November 23, 2010 to the hospital in support of this claim. Plaintiff did not sign any documents on November 23, 2010, let alone the document attached as Exhibit "B" or any contract. Plaintiff did not and would not have signed such a document, which contains unreasonable and unconscionable terms and purports to assign rights to Plaintiff's story for one British pound, **which is less than two American dollars.** Exhibit "B" was fabricated, manufactured and/or otherwise procured by fraud. It is simply another desperate attempt by Defendant to exploit Plaintiff and his family for its own financial gain.

10.      Defendant's representatives also contacted Plaintiff's grandmother and falsely represented that Plaintiff had agreed to give Defendant access, but she needed to sign a release on his behalf so that the hospital and medical staff would grant Defendant full access to Plaintiff and his medical records at the hospital. Defendant has also been prodding Plaintiff's grandparents for information regarding Plaintiff's extended family and friends, in hopes that they might provide information or access to Defendant.

11.      Despite Plaintiff and his grandparents' and others' repeated requests that Defendant leave Plaintiff and his family alone, Defendant simply will not stop harassing and bothering Plaintiff and his family. Defendant is determined to exploit Plaintiff for its own financial gain, regardless of the cost to Plaintiff. Defendant's behavior is detrimental to Plaintiff's treatment, recovery and

safety. Plaintiff's efforts are further victimizing Plaintiff by interfering with Plaintiff's right to contract with other reputable media outlets and are interfering with his ability to obtain maximum value for the compassionate and appropriate documentation of his compelling story. Of significant note, the public relations firm and attorneys working for Plaintiff are doing so on a pro bono basis so that all proceeds will benefit Plaintiff and his family, unlike Defendant, who is attempting to capitalize and exploit Plaintiff's personal tragedy for its own commercial gain. For all these reasons, Plaintiff seeks the following relief from this Court.

## V.

### Original Petition

In support of his Original Petition, Plaintiff, DALLAS WIENS, re-alleges and incorporates by reference herein the information set forth in sections I. through IV. of this pleading and in further support of its Original Petition would respectfully show the Court as follows:

### A.    Request for Declaratory Judgment

1.      Plaintiff incorporates by reference herein the allegations in section IV. above. Pursuant to Sections 37.001 et. seq. of the Texas Civil Practice and Remedies Code. Plaintiff seeks a Declaratory Judgment that: 1) the June 2010 purported contract between Plaintiff and Defendant is invalid and void for the reason that the consideration failed, it is unconscionable, and it was procured by fraud or mistake; and 2) the November 23, 2010 purported contract attached hereto as Exhibit "B" is invalid and void because Plaintiff did not sign such contract on November 23, 2010 or on any other date, or, in the alternative, if Plaintiff signed anything with Defendant on November 23, 2010, it was obtained by fraud or mistake because Plaintiff was blind on November 23, 2010, and did not sign any document which he understood to be a contract with Defendant on such date

and further the November 23, 2010 document is illusory and is not a "contract" at all, but rather, is simply an agreement to agree and does not bind Plaintiff to any obligations or convey any rights to Defendant.

      2.     Additionally, Plaintiff seeks a declaration and judgment against Defendant for the return to Plaintiff of any and all interview material, photographs, video footage, and/or images taken of or relating to Plaintiff and/or his family by Defendant and/or Defendant's agents, representatives and/or independent contractors pursuant to the purported June 2010 contract.

      3.     As set forth below, Plaintiff also seeks temporary and permanent injunctive relief as a consequence of Defendant's wrongful actions.

**B.**     **Cause of Action to Void Contract**

      1.     Plaintiff incorporates by reference herein the allegations in Article IV. and V.(A) above. Plaintiff requests that the Court enter a judgment voiding the June 2010 purported contract between Plaintiff and Defendant for the reason that the consideration failed, it is unconscionable, and it was procured by fraud or mistake.

      2.     Plaintiff further seeks a judgment against Defendant for the return to Plaintiff of any and all interview material, photographs, video footage, and/or images taken of or relating to Plaintiff and/or his family by Defendant and/or Defendant's agents, representatives and/or independent contractors pursuant to the purported June 2010 contract.

      3.     As set forth below, Plaintiff also seeks temporary and permanent injunctive relief as a consequence of Defendant's wrongful actions.

**C.**     **Fraud Claim**

      1.     Plaintiff incorporates by reference herein the allegations in Article IV. and V.(A), (B) above. In 2010, Defendant represented to Plaintiff that Defendant would come to Plaintiff's

home with a photographer and videographer and interview and take pictures of Plaintiff and his family. Defendant further represented to Plaintiff that in exchange for being permitted to take these photographs, Defendant would pay Plaintiff $1,500.00 and provide Plaintiff with copies of all interview material, photographs, video footage, and/or images of Plaintiff and his family and would allow Plaintiff to review all such materials before any were published. Defendant's representations were material, false and were made with the intent that Plaintiff act on these representations. When Defendant made these representations to Plaintiff, Defendant knew the representations were false or, in the alternative, made the representations recklessly, as a positive assertion, and without knowledge of their truth.

2.      On November 23, 2010, Defendant sent a videographer to Plaintiff's home and took video footage of Plaintiff and his family. Defendant also interviewed Plaintiff. On another date, Defendant also sent a photographer to take photographs of Plaintiff. Relying on Defendant's representations, Plaintiff cooperated with Defendant in allowing these activities to take place. Despite the fact that Defendant interviewed Plaintiff and such photographs and video footage were taken, to this date Defendant has not provided Plaintiff with copies of any of the photographs, video footage, or interview material, nor has Defendant allowed Plaintiff to review these materials, nor has Defendant paid Plaintiff the promised compensation of $1,500.00, nor even one British pound.

3.      Plaintiff seeks judgment against Defendant for return of any and all photographs and video footage taken of Plaintiff and/or his family by Defendant and/or Defendant's agents, representatives and/or independent contractors and any and all interview materials obtained from Plaintiff, as a result of Defendant's fraudulent actions. As set forth below, Plaintiff also seeks exemplary damages for Defendant's fraudulent and malicious actions.

App. 0012

4.      As set forth below, Plaintiff also seeks temporary and permanent injunctive relief as a consequence of Defendant's wrongful actions.

**D.      Invasion of Privacy Claim- Appropriation of Name or Likeness**

1.      Plaintiff incorporates by reference herein the allegations in Article IV. and V.(A), (B), (C) above. On or about November 23, 2010, Defendant obtained video footage of Plaintiff and his family and interviewed him. On another day, Defendant's photographer took photographs of Plaintiff. Defendant obtained these materials through fraudulent actions and/or through a contract that is unconscionable and voidable. Defendant has published at least one photograph of Plaintiff and his daughter on Defendant's website. Plaintiff, who has a severely disfigured face and, therefore, distinguishing physical characteristics, is easily identifiable in this photo. The Defendant has benefitted financially and otherwise from appropriating and publishing Plaintiff's name and likeness. Plaintiff has received nothing in exchange for Defendant's appropriation.

2.      Plaintiff has suffered injuries as a consequence of Defendant's actions including, but not limited to, mental anguish and loss of value associated with exclusive use of his name and likeness and is entitled to damages for these injuries. Further, as set forth above, because Defendant obtained Plaintiff's name and likeness through fraud and with malice, Plaintiff is entitled to punitive damages.

3.      As set forth below, Plaintiff also seeks temporary and permanent injunctive relief as a consequence of Defendant's wrongful actions.

**E.      Demand for Punitive Damages**

Defendant has acted with malice, gross negligence, and wanton disregard for the rights and interests of Plaintiff by trying to assert rights under the invalid, voidable, and fraudulent purported November 23, 2010 contract. Defendant continues to harass Plaintiff and his family to enforce

Defendant's alleged rights under this invalid, voidable and fraudulent contract. Further, Defendant maliciously appropriated Plaintiff's image and name through fraud and without valid authority. Accordingly Defendant should be ordered to pay punitive damages in an amount sufficient to punish it by setting an example for others that similar conduct will not be tolerated.

**F.    Demand for Attorneys' Fees**

The Plaintiff has retained the law firm of Shannon, Gracey, Ratliff & Miller, L.L.P., to represent him in this matter. Attorneys for Shannon, Gracey, Ratliff & Miller, L.L.P., have labored and incurred expenses in order to pursue Plaintiff's claims against and seek relief from Defendant. Plaintiff requests that he be awarded his reasonable and necessary attorney fees and expenses in this proceeding and in the event of an appeal pursuant to §37.009 of the Texas Civil Practice and Remedies Code.

**G.    Jury Demand**

Plaintiff hereby requests a trial by jury of all issues in this litigation.

**VI.**

**Application for Temporary Restraining Order
and Temporary and Permanent Injunction**

In support of his Application for Temporary Restraining Order and Temporary and Permanent Injunction against BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. ("Defendant"), Plaintiff, DALLAS WIENS, re-alleges and incorporates by reference herein the information set forth in sections I. through V. of this pleading and, in further support, would respectfully show the Court as follows:

**A.    Basis for Temporary Restraining Order**

1.    Despite requests from Plaintiff, the hospital staff, and Plaintiff's attorneys' that Defendant quit contacting Plaintiff and his family and leave them alone, Defendant continues to try

to harass and bother Plaintiff and his family by calling Plaintiff and his family and trying to obtain access to Plaintiff and his medical information through hospital staff. Because Plaintiff recently underwent a major medical procedure that has received a lot of publicity, Defendant's continued harassment of Plaintiff is causing Plaintiff great stress and is jeopardizing his recovery and safety in his current fragile medical condition. Further, Defendant's continuing efforts to contact Plaintiff's family, including Plaintiff's grandparents, Del and Sue Peterson, is harassing and invades their privacy during a time when their family needs to be left alone.

2.      Additionally, Defendant will publish, disseminate or sell photographs, video footage, and interview material obtained from Plaintiff and his family on November 23, 2010 and otherwise if it is not immediately restrained from doing so. Defendant has already published at least one photo of Plaintiff and his daughter on Defendant's website. Defendant has not compensated Plaintiff for these photographs, video footage, and/or interview materials or provided Plaintiff with copies of the photographs, video footage and interview material or even allowed Plaintiff to review same. As such, any and all purported consideration for the purported June 2010 contract fails; and the contract is voidable. In the alternative, the purported June 2010 contract is void or voidable because it is unconscionable and/or was procured by fraud or mistake. Defendant is not entitled to the photographs, video footage, or interview materials it wrongfully obtained from Plaintiff and is not authorized to disseminate or publish same. Plaintiff further incorporates by reference the facts set forth in sections IV and V. of this pleading.   The purported November 2010 contract is fraudulent and void on its face as Plaintiff did not sign it on November 23, 2010 or any other date.

3.      Based on the facts set forth herein, Plaintiff asserts that if Defendant is not immediately and temporarily restrained from bothering, contacting, and harassing Plaintiff, his family members, and his health care providers and from publishing or disseminating photographs,

video footage, or interview material of or related to Plaintiff and his family, Plaintiff will be immediately and irreparably harmed and, for such harm, will have no adequate remedy at law.

**B.     Notice and Irreparable Harm**

Plaintiff would request that this Court issue a temporary restraining order immediately and without providing Defendant advance notice or an opportunity for a hearing. Plaintiff would show that should this Court not act expeditiously in this matter, both the Plaintiff and his family will suffer irreparable injury for which Plaintiff has no adequate remedy at law, as contact by Defendant with Plaintiff and his family causes harm to Plaintiff and his family, as such contact invades their privacy, is harassing, and in all reasonable probability will jeopardize the physical safety and wellbeing of Plaintiff who is recovering from a serious and life-altering medical procedure. Further, if the Court does not act expeditiously in this matter by restraining, and thereafter enjoining, Defendant from publishing and disseminating the photographs, video footage, and interview material it obtained from Plaintiff under the purported June 2010 contract, Plaintiff will be immediately and irreparably harmed and will have no adequate remedy at law.

**C.     Temporary Restraining Order and Temporary and Permanent Injunction**

1.     As set forth in greater detail above, including sections IV. and V. of this pleading, Defendant continues to harass Plaintiff and assert its rights under a purported November 23, 2010 contract that Plaintiff believes is not a valid contract and has been procured by fraud. Plaintiff and his family will continue to suffer from this harassment and invasion of their privacy; therefore, irreparable harm and injury is imminent to Plaintiff and his family. Defendant's harassment of Plaintiff and his family is causing Plaintiff and his family stress and, in all reasonable probability, will cause physical harm to Plaintiff who is in a fragile state as he tries to recover from his face transplant. Further, injury and harm is imminent to Plaintiff and his

family if Defendant is permitted to continue to disseminate and/or publish the photographs, video footage, or interview material it obtained, free of charge, by taking advantage of Plaintiff and falsely representing that Defendant would compensate Plaintiff for these items and provide him with copies of same as such publication cannot be "undone" and such actions by Defendant are impacting, and will continue to impact, Plaintiff's ability to negotiate contracts with other media outlets and to obtain maximum value for the compassionate and appropriate documentation of his story.

  2. For all these reasons, in order to maintain the status quo in this matter, which is the last peaceful and non-contested state which preceded this controversy, and pursuant to sections 65.011(1),(2), and (3) of the TEXAS CIVIL PRACTICE & REMEDIES CODE, Plaintiff is entitled to the issuance of a temporary restraining order, and upon notice and hearing, a temporary injunction prohibiting Defendant and any of its agents, employees, servants and/or any entities with which they may be associated, from contacting, by telephone, in person or any other means, Plaintiff, Dallas Wiens, and his grandparents, Del Peterson and Sue Peterson, and/or his daughter, Scarlette Wiens, and/or any of Plaintiff's health care providers, and further, from publishing, selling, or disseminating any photographs, video footage, or interview material of or related in any way to Plaintiff DALLAS WIENS and his aforementioned family members. A copy of the proposed temporary restraining order is attached as Exhibit "C".

**D.** **Bond**

  Plaintiff is willing to post bond in order to obtain the temporary restraining order and injunctive relief applied for herein.

**E.** **Request for Hearing on Temporary Injunction**

  Plaintiff respectfully requests that the Court order Defendant to appear before the Court,

on a date and time determined by the Court, to show cause, if any there be, why this temporary restraining order should not be converted into a temporary injunction as requested by Plaintiff. Plaintiff further requests that the Court direct The Clerk of the Court to issue a show cause notice to Defendant to appear at the aforementioned temporary injunction hearing.

## VII.

### Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. be cited to appear and answer and that:

1.    temporary restraining order be issued restraining BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which it may be associated, from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means;

2.    temporary restraining order be issued restraining BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which it may be associated, from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens;

3.    the Court issue citation and notice as required by law;

4.    that Defendant be cited to appear and show cause, and that on such hearing, a temporary injunction be issued enjoining BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which it may be associated, from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means;

5.      that Defendant be cited to appear and show cause, and that on such hearing, a temporary injunction be issued enjoining BARCROFT MEDIA LIMITED D/B/A BARCROFT MEDIA, LTD., and/or BARCROFT U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which it may be associated, from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens;

6.      that, upon final trial, the Court convert the aforementioned temporary injunctions into permanent injunctions against Defendant;

7.      that upon final trial, the Court enter a judgment in favor of Plaintiff declaring that the purported contract dated June 2010 alleged to be between Plaintiff and Defendant is an invalid contract and void;

8.      that upon final trial, the Court enter a judgment in favor of Plaintiff declaring that the purported contract dated November 23, 2010 alleged to be between Plaintiff and Defendant and attached hereto as Exhibit "B" is an invalid contract and void;

9.      that upon final trial, the Court enter a judgment in favor of Plaintiff declaring that Defendant is required to return to Plaintiff all photographs and video footage taken of Plaintiff and/or his family on November 23, 2010 or at any other time, and all interview materials obtained from Plaintiff and his family on November 23, 2010 or at any other time;

10.     that Plaintiff be awarded actual and punitive damages assessed within the minimum jurisdictional limits of this Court;

11.     that Plaintiff recover reasonable attorneys' fees and costs incurred in prosecuting this claim through trial and in the event of an appeal;

12.     that Plaintiff recover pre-judgment and post-judgment interest as allowed by law; and

13.     that Plaintiff's requests be granted and that he have such other and further relief at law or in equity to which he may show himself justly entitled.

Respectfully submitted,

Lisa H. Jamieson
State Bar No. 10561400
Kleber C. Miller
State Bar No. 14095000
Natalie S. Brackett
State Bar No. 24051480
Shannon, Gracey, Ratliff & Miller, L.L.P.
777 Main Street
Suite 3800
Fort Worth, Texas 76102
Telephone: (817) 336-9333
Facsimile: (817) 336-3735
**ATTORNEY FOR PLAINTIFF,
DALLAS WIENS**

## **VERIFICATION**

COMMONWEALTH OF MASSACHUSETTS          §
                                                                                  §
COUNTY OF _Suffok_                                       §
                                                                                  §

BEFORE ME, the undersigned notary public, on this day personally appeared DALLAS WIENS, who, being by me duly sworn on oath deposed and said that he is the Plaintiff in the above-entitled and numbered cause; that he has read the above Application for Temporary Restraining Order and Temporary and Permanent Injunction and Original Petition and that the facts contained in sections IV, V, and VI are within his personal knowledge and are true and correct. Dallas Wiens further stated that he did not sign the document dated November 23, 2010 and attached as Exhibit "B" to the Application for Temporary Restraining Order and Temporary and Permanent Injunction and Original Petition and that he did not receive any consideration for the purported contract he signed in June 2010.

_____
DALLAS WIENS

SUBSCRIBED AND SWORN TO BEFORE ME on the _11th_ day of April 2011 to certify which witness my hand and seal of office.

Notary Public,   PATRICIA ANN JACQUES
Commonwealth of Massachusetts

My Commission Expires July 22, 2016

# EXHIBIT "A"

WIENS V. BARCROFT MEDIA LIMITED, ET AL.
*APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION AND ORIGINAL PETITION*

App. 0023



Tel: +44 (0)20 7923 1827
www.barcroftmedia.com
Unit 9, 14 Southgate Road,
London, N1 3LY

**To whom it may concern:**

This is to confirm that Barcroft Media is acting with my express permission to produce a documentary about my face transplant and rehabilitation from that operation.

I am happy for Brigham and Women's Hospital to co-operate fully with Barcroft Media and to discuss medical information, post-operative scheduling and any information from my medical records.

I would also be happy for Brigham and Women's Hospital to discuss my operation and care to be used as part of the documentary.

Dallas Wiens:
Signature:                                    Date: 25th March 2011

Registered office: 2 Churchill Court North Harrow Middlesex HA2 7SA UNITED KINGDOM
Registered in England Company No 4826405 VAT no GB 766 6507 93

App. 0024

# EXHIBIT "B"

WIENS V. BARCROFT MEDIA LIMITED, ET AL.
*APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION AND ORIGINAL PETITION*

App. 0025



**BARCROFT USA**

Date: 23rd November 2010.

Re: My Face Transplant

Dear Mr Dallas Wiens,

Further to your recent discussion with Miss Isla Harvey of Barcroft Media Ltd, we are writing to you in connection with the above programme. The proposed main subject matter of the programme will be about My Face Transplant

I would like to confirm that in consideration of £1 (one pound) the receipt and sufficiency of which you hereby acknowledge, you agree to grant us the exclusive option to International Rights to enable Barcroft Media Ltd ('the producers') to develop and produce the programme, and agree that during the period of six months (the 'option period') which follows on from the date of this letter, you will not grant an option or authorise, license or permit any third party to produce a television series, film, or documentary based on the story during the option period.

In the event that the producer exercises the option, the producer will intend to enter into a more formal long form agreement with you, the provisions of which are to be negotiated in good faith between us. The producer will be responsible for the development and raising of the finance for the programme. However until such formal agreement is entered into, this letter shall be binding and shall constitute this agreement between us.

If however after the expiry of the six month period we decide to no longer produce the programme, we will provide you with written notice of such and you will be free to enter into discussions with any third party or broadcaster for the purpose of making a programme about My Face Transplant

You confirm that you have full authority to enter into and perform this agreement and that you are not bound by any previous agreement nor will you enter into any agreement during the option period which conflicts with the terms of this agreement.

Confidentiality

You agree to treat as strictly private, all information relating to the programme obtained from us, and shall not disclose for the benefit of any third party, details of the programme. You further agree to keep all materials containing confidential information in relation to the programme in a safe and secure place and return them to us immediately on determination of our discussions in relation to the programme, or on our prior request without retaining copies.

Please can you indicate your acceptance of the above by signing below where indicated.

Kind regards

Yours sincerely,                                        Agreed and accepted

SAM BARCROFT                                          NAME Mr Dallas Wiens

MANAGING DIRECTOR

# *EXHIBIT "C"*

WIENS V. BARCROFT MEDIA LIMITED, ET AL.
*APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT*
*INJUNCTION AND ORIGINAL PETITION*

App. 0027

Cause No. _____

| | | |
|---|---|---|
| DALLAS WIENS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| BARCROFT MEDIA LIMITED D/B/A | § | |
| BARCROFT MEDIA, LTD., and/or | § | |
| BARCROFT U.S.A. | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

On the ___ day of April, 2011, the Application of Plaintiff Dallas Wiens for a Temporary Restraining Order was heard by the Court on Plaintiff's verified pleading without notice to any other interested party. Among other facts, Plaintiff presented the following information to the Court in Plaintiff's verified pleading.

1.      On November 13, 2008, while painting the exterior of Ridglea Baptist Church in Fort Worth, Texas, Plaintiff Dallas Wiens came in direct contact with a high voltage power line, burning his face to the skull in a tragic and life-altering accident that blinded him, left him in a coma for three months, and severely disfigured his face. Plaintiff subsequently endured more than twenty surgeries to save his life and cover the destroyed portion of his face, but even then he was left without lips, eyes, nose or sensation in the tissue that remained on his face. After an extensive medical, financial and psychological qualifying process over many months, Plaintiff qualified to be placed on the face transplant list at Brigham & Women's Hospital in Boston, Massachusetts.

2.      Defendant is a media company based in the United Kingdom, but maintains an office in New York, City. According to Defendant's website, among other things, Defendant publishes sensational tabloid articles with titles such as "I Starved Myself For Model Look," "World's Oldest Doctor" and "Stripper Mum and Daughter." Defendant began contacting Plaintiff, who lives with his grandparents, Sue and Del Peterson, in Fort Worth, Texas, on or about January 28, 2010 asking Plaintiff for "exclusive international rights" to cover his story and take photographs and footage of him and his family for a documentary. Plaintiff repeatedly denied Defendant's requests and made it clear that Plaintiff did not want Defendant to have exclusive rights to his story or image. Plaintiff informed Defendant that he was represented by a Texas attorney, Lory Moore, and when Defendant's agent, Isla Harvey, contacted Ms. Moore concerning their request, Ms. Moore further reiterated that Mr. Wiens would not be granting exclusive rights in the immediate

App. 0028

future.    Ms. Moore additionally referred Ms. Harvey to a respected public relations firm in Washington, D.C., who had agreed to represent Plaintiff in all media matters on a pro bono basis. A representative for the public relations firm once again informed Ms. Harvey that Mr. Wiens would not be granting exclusivity in media requests, but that Defendant's request would be kept in consideration.

3.    In June 2010, after months of fruitless requests and failed attempts to get the broad agreement Defendant wanted, and despite being aware that Plaintiff was represented by counsel and a public relations firm, Defendant tried a new tactic. Defendant told Plaintiff that it wanted to publish a heartwarming human interest story about Plaintiff in the December or holiday issue of a British women's magazine and asked Plaintiff if Defendant could have **limited** access to take some pictures of Plaintiff and interview him and his family for this purpose. Defendant represented that it knew Plaintiff was having difficult times financially, and it would be in Defendant's best interest to do the agreement immediately.  In exchange, Defendant represented that it would pay Plaintiff $1,500.00 and provide Plaintiff with copies of all of the photographs, footage, and interview material.  Defendant also represented that Plaintiff could review all of this material before it was published.

4.    Plaintiff told Defendant that it would only have access to Plaintiff for this limited purpose, as stated in Paragraph 3, until December 31, 2010, and that Plaintiff was not granting Defendant any kind of exclusive rights, international or otherwise, to his story or image. As such, Defendant sent a one page document to Plaintiff's home in June 2010.  Unable to read the document, Plaintiff asked his grandfather to read the purported contract to him.  No attorney reviewed this document or consulted with Plaintiff. Believing that he was signing an agreement for the limited purposes and limited time frame described above and for consideration of $1,500.00 and the copies of as well as the opportunity to review the photographs, video footage, and interview material, Plaintiff signed the document and returned it to Defendant.  Plaintiff does not have a copy of the document, and, despite requests from Plaintiff and his attorneys, Defendant has not produced a copy of this June 2010 paper.  This is the only document Plaintiff ever signed for Defendant.

5.    Seemingly pursuant to the June 2010 purported contract, Defendant came to Plaintiff's home, interviewed Plaintiff, and took video footage of Plaintiff and his family on November 23, 2010.  At this video and interview session, Defendant's representative, Isla Harvey, presented numerous additional contracts and repeatedly hounded Plaintiff to sign them.  Plaintiff refused and told Defendant's representative he would not sign any contracts without his attorneys reviewing the contracts and **did not sign anything on November 23, 2010**.  Defendant displayed the above documents and Plaintiff stated his refusal to sign any of them in front of multiple witnesses.

6.    Defendant left the November 23, 2010 photo shoot with video footage of Plaintiff and his family and personal interview information for a story in the purported women's magazine. Defendant also hired a free lance photographer who came and took photographs of Plaintiff for the purported women's magazine article on a different day.  Although Plaintiff fully performed his obligations under the purported June 2010 contract, Plaintiff has not been paid the $1,500.00 he was promised, has not received copies of the photographs, video footage, or interview materials, and has not been given the opportunity to review any such material before publication.  Further, Defendant

has published at least one photograph of Plaintiff and his daughter, obtained by Defendant's photographer, on Defendant's website.

7.     In March 2011, in a sixteen hour procedure involving thirty-two surgeons, countless hospital staff and support personnel, and the original surgeon from Parkland Hospital who initially saved Plaintiff's life following his devastating electrocution, Plaintiff received a full face transplant at Brigham and Women's Hospital in Boston, Massachusetts. This was a ground-breaking surgery, as it is the first full face transplant ever attempted in United States history, and only the second worldwide. This surgery is of critical importance, not only to Plaintiff and his family on a personal level, but also to the international medical community and the United States Department of Defense who has invested 4.5 million dollars to pay for Plaintiff's surgery as part of an initiative to fund medical procedures for soldiers injured in war.

8.     Despite the fact that Plaintiff's procedure is history-making and thus highly experimental and intrinsically high risk, Defendant has continued to hound and bother not only Plaintiff, but his grandparents, attorneys, hospital staff, and the Washington D.C. public relations firm who is handling Plaintiff's publicity and media contracts on a pro bono basis. Shockingly, within hours of the initial press conference announcing the ground-breaking surgery, Defendant's agents were calling and texting Plaintiff's personal cell phone. Still under sedation from his surgery, Plaintiff answered one of the initial calls, but subsequently informed his attorney, Ms. Moore, of Defendant's distressful actions and requested that Defendant not contact him any further. Despite Plaintiff's refusal to take Defendant's calls, and in blatant disregard of Plaintiff's attorney's demand that Defendant no longer contact Plaintiff or his family, Defendant's agents have continued to call and text Plaintiff and his family multiple times daily in the days following Plaintiff's surgery. Defendant has continued to be intrusive and demanding, despite the fact that dozens of national and international media outlets have respected Plaintiff's and his doctors' and advocates' requests to give Plaintiff privacy during this critical recovery time.

9.     Specifically, since Plaintiff was admitted to Brigham and Women's Hospital for the face transplant, Defendant's representatives have been bothering and harassing the hospital staff and Plaintiff and his family demanding access to Plaintiff while he is in the hospital so that Defendant can publish his story. At one point, Defendant federal expressed a consent form, attached as Exhibit "A" hereto, for Plaintiff to sign. Defendant has used every tactic imaginable to try and gain access to Plaintiff. Defendant now claims that it has an exclusive contract to publish Plaintiff's story and produced a copy of the document attached as Exhibit "B" and dated November 23, 2010 to the hospital in support of this claim. Plaintiff did not sign any documents on November 23, 2010, let alone the document attached as Exhibit "B" or any contract. Plaintiff did not and would not have signed such a document, which contains unreasonable and unconscionable terms and purports to assign rights to Plaintiff's story for one British pound, **which is less than two American dollars**. Exhibit "B" was fabricated, manufactured and/or otherwise procured by fraud. It is simply another desperate attempt by Defendant to exploit Plaintiff and his family for its own financial gain.

10.     Defendant's representatives also contacted Plaintiff's grandmother and falsely represented that Plaintiff had agreed to give Defendant access, but she needed to sign a release on his behalf so that the hospital and medical staff would grant Defendant full access to Plaintiff and his medical records at the hospital. Defendant has also been prodding Plaintiff's grandparents for

information regarding Plaintiff's extended family and friends, in hopes that they might provide information or access to Defendant.

11.   Despite Plaintiff and his grandparents' and others' repeated requests that Defendant leave Plaintiff and his family alone, Defendant simply will not stop harassing and bothering Plaintiff and his family. Defendant is determined to exploit Plaintiff for its own financial gain, regardless of the cost to Plaintiff. Defendant's behavior is detrimental to Plaintiff's treatment, recovery and safety. Plaintiff's efforts are further victimizing Plaintiff by interfering with Plaintiff's right to contract with other reputable media outlets and are interfering with his ability to obtain maximum value for the compassionate and appropriate documentation of his compelling story.

It clearly appears from the specific facts set forth herein that immediate and irreparable injury, loss and harm will result to Dallas Wiens and his family unless a hearing is had thereon, and unless Defendant Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A., as well as any of his agents, servants, employees, and/or any persons or entities with which it may be associated, is enjoined from doing or attempting to do by any means, directly or indirectly, all of the following:

1.   from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means; and

2.   from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens.

Harm will result and is irreparable because of the following:

1.   Plaintiff Dallas Wiens is attempting to recover from a ground-breaking and inherently high-risk medical procedure (a face transplant) and, accordingly, is in a very fragile state. If Defendant is not immediately restrained from attempting to contact or access and/or actually contacting or accessing Plaintiff Dallas Wiens or his family, in all probability Plaintiff's recovery and treatment will be jeopardized and it appears he will have no adequate remedy at law.

2.   Once Defendant sells, disseminates, or publishes the photographs, video footage, or interview material it appears to have wrongfully obtained of and from Dallas Wiens and his family, it appears Plaintiff will have no adequate remedy at law.

3.      It further appears that Defendant has already published at least one photograph it obtained of Plaintiff and, if Defendant is not immediately restrained, it appears in all probability that Defendant will publish additional photographs, video footage, and/or interview material of and from Plaintiff Dallas Wiens and his family.

4.      Defendant's actions of asserting its purported rights under the alleged November 23, 2010 "contract" are interfering with Plaintiff's ability to contract with other media outlets and to obtain maximum value for the compassionate and appropriate documentation of his story.  As such, if Defendant is not immediately restrained from asserting these purported rights, contacting and harassing Plaintiff and his family, and from publishing the photographs, video footage, and interview material of and from Plaintiff and his family, it appears Plaintiff will be further injured before he has the opportunity to resolve this matter through a court of law and will suffer irreparable harm for which Plaintiff has no adequate remedy at law.

It further appears Defendant Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. will commit the foregoing acts before notice can be given and a hearing is had on Plaintiff's Temporary Injunction and if the commission of these acts is not restrained immediately.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which he may be associated, is enjoined from doing or attempting to do by any means, directly or indirectly, all of the following:

1.      from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means; and

2.      from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens.

IT IS FURTHER ORDERED that said Temporary Restraining Order runs from the date of the signing of this Order and shall not be effective unless and until Dallas Wiens executes and files with the Clerk a bond, in conformity with the law, in the amount of _____ dollars ($_____). Such Temporary Restraining Order shall run until and through the 14th day from the signing of this Order and shall expire thereafter unless further Order of this Court extends the same.

The Clerk of the Court shall forthwith, on the filing by Plaintiff Dallas Wiens the bond herein required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law in terms of this Order.

IT IS FURTHER ORDERED that Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. appear on _____, 2011 in the _____ District Court in Fort Worth, Tarrant County, Texas at ____ o'clock ____.m. and to then and there show cause, if any there be, why this temporary restraining order not be converted into a temporary injunction as requested by Plaintiff Dallas Wiens. The Clerk of the Court is hereby directed to issue a show cause notice to Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. to appear at the temporary injunction hearing.

Date: _____

Hour of Issuance: _____

Date Order Expires: _____

_____
JUDGE PRESIDING

RETURN COPY TO:
Lisa H. Jamieson
State Bar No. 10561400
Shannon, Gracey, Ratliff & Miller, L.L.P.
777 Main Street, Suite 3800
Fort Worth, Texas 76102
Telephone:  (817) 336-9333
Facsimile: (817) 336-3735

App. 0034

Cause No. 096 252218 11

Dallas Wiens,
        Plaintiff

V.

Barcroft Media Limited
        Certificate of Conference for TRO
To the best of my knowledge,
the Defendant, Barcroft Media Limited D/B/A
Barcroft Media Ltd., is not represented by counsel
        at this time.

and/or
Barcroft U.S.A.

        Natalie S. Brackett
        Natalie Brackett
Date: April 12, 2011   State Bar No. 24051480

FILED
TARRANT COUNTY
2011 APR 12 PM 3:01
THOMAS A. WILDER
DISTRICT CLERK

# TAB 3.

Cause No. 96-252218-11

| | | |
|---|---|---|
| DALLAS WIENS | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| BARCROFT MEDIA LIMITED D/B/A | § | |
| BARCROFT MEDIA, LTD., and/or | § | |
| BARCROFT U.S.A. | § | |
| | § | |
| Defendant. | § | 96th JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

On the 12th day of April, 2011, the Application of Plaintiff Dallas Wiens for a Temporary Restraining Order was heard by the Court on Plaintiff's verified pleading without notice to any other interested party. Among other facts, Plaintiff presented the following information to the Court in Plaintiff's verified pleading.

1.     On November 13, 2008, while painting the exterior of Ridglea Baptist Church in Fort Worth, Texas, Plaintiff Dallas Wiens came in direct contact with a high voltage power line, burning his face to the skull in a tragic and life-altering accident that blinded him, left him in a coma for three months, and severely disfigured his face. Plaintiff subsequently endured more than twenty surgeries to save his life and cover the destroyed portion of his face, but even then he was left without lips, eyes, nose or sensation in the tissue that remained on his face.     After an extensive medical, financial and psychological qualifying process over many months, Plaintiff qualified to be placed on the face transplant list at Brigham & Women's Hospital in Boston, Massachusetts.

2.     Defendant is a media company based in the United Kingdom, but maintains an office in New York, City. According to Defendant's website, among other things, Defendant publishes sensational tabloid articles with titles such as "I Starved Myself For Model Look," "World's Oldest Doctor" and "Stripper Mum and Daughter." Defendant began contacting Plaintiff, who lives with his grandparents, Sue and Del Peterson, in Fort Worth, Texas, on or about January 28, 2010 asking Plaintiff for "exclusive international rights" to cover his story and take photographs and footage of him and his family for a documentary. Plaintiff repeatedly denied Defendant's requests and made it clear that Plaintiff did not want Defendant to have exclusive rights to his story or image. Plaintiff informed Defendant that he was represented by a Texas attorney, Lory Moore, and when Defendant's agent, Isla Harvey, contacted Ms. Moore concerning their request, Ms. Moore further reiterated that Mr. Wiens would not be granting exclusive rights in the immediate

Court's Minutes   PAGE 1
Transaction # 12

future.   Ms. Moore additionally referred Ms. Harvey to a respected public relations firm in Washington, D.C., who had agreed to represent Plaintiff in all media matters on a pro bono basis. A representative for the public relations firm once again informed Ms. Harvey that Mr. Wiens would not be granting exclusivity in media requests, but that Defendant's request would be kept in consideration.

3.     In June 2010, after months of fruitless requests and failed attempts to get the broad agreement Defendant wanted, and despite being aware that Plaintiff was represented by counsel and a public relations firm, Defendant tried a new tactic.  Defendant told Plaintiff that it wanted to publish a heartwarming human interest story about Plaintiff in the December or holiday issue of a British women's magazine and asked Plaintiff if Defendant could have **limited** access to take some pictures of Plaintiff and interview him and his family for this purpose. Defendant represented that it knew Plaintiff was having difficult times financially, and it would be in Defendant's best interest to do the agreement immediately.  In exchange, Defendant represented that it would pay Plaintiff $1,500.00 and provide Plaintiff with copies of all of the photographs, footage, and interview material. Defendant also represented that Plaintiff could review all of this material before it was published.

4.     Plaintiff told Defendant that it would only have access to Plaintiff for this limited purpose, as stated in Paragraph 3, until December 31, 2010, and that Plaintiff was not granting Defendant any kind of exclusive rights, international or otherwise, to his story or image.  As such, Defendant sent a one page document to Plaintiff's home in June 2010.  Unable to read the document, Plaintiff asked his grandfather to read the purported contract to him.  No attorney reviewed this document or consulted with Plaintiff.  Believing that he was signing an agreement for the limited purposes and limited time frame described above and for consideration of $1,500.00 and the copies of as well as the opportunity to review the photographs, video footage, and interview material, Plaintiff signed the document and returned it to Defendant.  Plaintiff does not have a copy of the document, and, despite requests from Plaintiff and his attorneys, Defendant has not produced a copy of this June 2010 paper.  This is the only document Plaintiff ever signed for Defendant.

5.     Seemingly pursuant to the June 2010 purported contract, Defendant came to Plaintiff's home, interviewed Plaintiff, and took video footage of Plaintiff and his family on November 23, 2010.  At this video and interview session, Defendant's representative, Isla Harvey, presented numerous additional contracts and repeatedly hounded Plaintiff to sign them.  Plaintiff refused and told Defendant's representative he would not sign any contracts without his attorneys reviewing the contracts and **did not sign anything on November 23, 2010.**  Defendant displayed the above documents and Plaintiff stated his refusal to sign any of them in front of multiple witnesses.

6.     Defendant left the November 23, 2010 photo shoot with video footage of Plaintiff and his family and personal interview information for a story in the purported women's magazine. Defendant also hired a free lance photographer who came and took photographs of Plaintiff for the purported women's magazine article on a different day.  Although Plaintiff fully performed his obligations under the purported June 2010 contract, Plaintiff has not been paid the $1,500.00 he was promised, has not received copies of the photographs, video footage, or interview materials, and has not been given the opportunity to review any such material before publication.  Further, Defendant

has published at least one photograph of Plaintiff and his daughter, obtained by Defendant's photographer, on Defendant's website.

7.   In March 2011, in a sixteen hour procedure involving thirty-two surgeons, countless hospital staff and support personnel, and the original surgeon from Parkland Hospital who initially saved Plaintiff's life following his devastating electrocution, Plaintiff received a full face transplant at Brigham and Women's Hospital in Boston, Massachusetts. This was a ground-breaking surgery, as it is the first full face transplant ever attempted in United States history, and only the second worldwide. This surgery is of critical importance, not only to Plaintiff and his family on a personal level, but also to the international medical community and the United States Department of Defense who has invested 4.5 million dollars to pay for Plaintiff's surgery as part of an initiative to fund medical procedures for soldiers injured in war.

8.   Despite the fact that Plaintiff's procedure is history-making and thus highly experimental and intrinsically high risk, Defendant has continued to hound and bother not only Plaintiff, but his grandparents, attorneys, hospital staff, and the Washington D.C. public relations firm who is handling Plaintiff's publicity and media contracts on a pro bono basis. Shockingly, within hours of the initial press conference announcing the ground-breaking surgery, Defendant's agents were calling and texting Plaintiff's personal cell phone. Still under sedation from his surgery, Plaintiff answered one of the initial calls, but subsequently informed his attorney, Ms. Moore, of Defendant's distressful actions and requested that Defendant not contact him any further. Despite Plaintiff's refusal to take Defendant's calls, and in blatant disregard of Plaintiff's attorney's demand that Defendant no longer contact Plaintiff or his family, Defendant's agents have continued to call and text Plaintiff and his family multiple times daily in the days following Plaintiff's surgery. Defendant has continued to be intrusive and demanding, despite the fact that dozens of national and international media outlets have respected Plaintiff's and his doctors' and advocates' requests to give Plaintiff privacy during this critical recovery time.

9.   Specifically, since Plaintiff was admitted to Brigham and Women's Hospital for the face transplant, Defendant's representatives have been bothering and harassing the hospital staff and Plaintiff and his family demanding access to Plaintiff while he is in the hospital so that Defendant can publish his story. At one point, Defendant federal expressed a consent form, attached as Exhibit "A" hereto, for Plaintiff to sign. Defendant has used every tactic imaginable to try and gain access to Plaintiff. Defendant now claims that it has an exclusive contract to publish Plaintiff's story and produced a copy of the document attached as Exhibit "B" and dated November 23, 2010 to the hospital in support of this claim. Plaintiff did not sign any documents on November 23, 2010, let alone the document attached as Exhibit "B" or any contract. Plaintiff did not and would not have signed such a document, which contains unreasonable and unconscionable terms and purports to assign rights to Plaintiff's story for one British pound, **which is less than two American dollars.** Exhibit "B" was fabricated, manufactured and/or otherwise procured by fraud. It is simply another desperate attempt by Defendant to exploit Plaintiff and his family for its own financial gain.

10.   Defendant's representatives also contacted Plaintiff's grandmother and falsely represented that Plaintiff had agreed to give Defendant access, but she needed to sign a release on his behalf so that the hospital and medical staff would grant Defendant full access to Plaintiff and his medical records at the hospital. Defendant has also been prodding Plaintiff's grandparents for

information regarding Plaintiff's extended family and friends, in hopes that they might provide information or access to Defendant.

11.     Despite Plaintiff and his grandparents' and others' repeated requests that Defendant leave Plaintiff and his family alone, Defendant simply will not stop harassing and bothering Plaintiff and his family. Defendant is determined to exploit Plaintiff for its own financial gain, regardless of the cost to Plaintiff. Defendant's behavior is detrimental to Plaintiff's treatment, recovery and safety. Plaintiff's efforts are further victimizing Plaintiff by interfering with Plaintiff's right to contract with other reputable media outlets and are interfering with his ability to obtain maximum value for the compassionate and appropriate documentation of his compelling story.

It clearly appears from the specific facts set forth herein that immediate and irreparable injury, loss and harm will result to Dallas Wiens and his family unless a hearing is had thereon, and unless Defendant Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A., as well as any of his agents, servants, employees, and/or any persons or entities with which it may be associated, is enjoined from doing or attempting to do by any means, directly or indirectly, all of the following:

1.     from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means; and

2.     from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens.

Harm will result and is irreparable because of the following:

1.     Plaintiff Dallas Wiens is attempting to recover from a ground-breaking and inherently high-risk medical procedure (a face transplant) and, accordingly, is in a very fragile state. If Defendant is not immediately restrained from attempting to contact or access and/or actually contacting or accessing Plaintiff Dallas Wiens or his family, in all probability Plaintiff's recovery and treatment will be jeopardized and it appears he will have no adequate remedy at law.

2.     Once Defendant sells, disseminates, or publishes the photographs, video footage, or interview material it appears to have wrongfully obtained of and from Dallas Wiens and his family, it appears Plaintiff will have no adequate remedy at law.

3.   It further appears that Defendant has already published at least one photograph it obtained of Plaintiff and, if Defendant is not immediately restrained, it appears in all probability that Defendant will publish additional photographs, video footage, and/or interview material of and from Plaintiff Dallas Wiens and his family.

4.   Defendant's actions of asserting its purported rights under the alleged November 23, 2010 "contract" are interfering with Plaintiff's ability to contract with other media outlets and to obtain maximum value for the compassionate and appropriate documentation of his story. As such, if Defendant is not immediately restrained from asserting these purported rights, contacting and harassing Plaintiff and his family, and from publishing the photographs, video footage, and interview material of and from Plaintiff and his family, it appears Plaintiff will be further injured before he has the opportunity to resolve this matter through a court of law and will suffer irreparable harm for which Plaintiff has no adequate remedy at law.

It further appears Defendant Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. will commit the foregoing acts before notice can be given and a hearing is had on Plaintiff's Temporary Injunction and if the commission of these acts is not restrained immediately.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. as well as any of its agents, servants, employees, and/or any persons or entities with which he may be associated, is enjoined from doing or attempting to do by any means, directly or indirectly, all of the following:

1.   from attempting to contact or access and/or actually contacting or accessing Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens, or any of Plaintiff's health care providers, whether such contact be in person, by telephone, in writing or any other means; and

2.   from publishing, selling, or disseminating in any way any interview material, photographs, video footage, or other images of or related to Plaintiff, Dallas Wiens, or his grandparents, Del Peterson and Sue Peterson, or his daughter, Scarlette Wiens.

IT IS FURTHER ORDERED that said Temporary Restraining Order runs from the date

of the signing of this Order and shall not be effective unless and until Dallas Wiens executes and

files with the Clerk a bond, in conformity with the law, in the amount of *which may be in the form of a cashiers check, RHW*

_Two hundred fifty_ dollars ($ _250.00_ ) Such Temporary Restraining Order shall

run until and through the 14th day from the signing of this Order and shall expire thereafter

unless further Order of this Court extends the same.

The Clerk of the Court shall forthwith, on the filing by Plaintiff Dallas Wiens the bond

herein required, and on approving the same according to the law, issue a temporary restraining

order in conformity with the law in terms of this Order.

IT IS FURTHER ORDERED that Barcroft Media Limited d/b/a Barcroft Media, Ltd.

and/or Barcroft U.S.A. appear on _APRIL 21ˢᵗ_, 2011 in the _96ᵗʰ_ District Court in

Fort Worth, Tarrant County, Texas at _9:00_ o'clock _A_.m. and to then and there show cause, if

any there be, why this temporary restraining order not be converted into a temporary injunction

as requested by Plaintiff Dallas Wiens. The Clerk of the Court is hereby directed to issue a show

cause notice to Barcroft Media Limited d/b/a Barcroft Media, Ltd. and/or Barcroft U.S.A. to

appear at the temporary injunction hearing.

Date: _April 12, 2011_

Hour of Issuance: _3:12 p.m._

Date Order Expires: _April 26, 2011 at 11:59 p.m._

_R. H. Wallace Jr._

JUDGE PRESIDING

RETURN COPY TO:
Lisa H. Jamieson
State Bar No. 10561400
Shannon, Gracey, Ratliff & Miller, L.L.P.
777 Main Street, Suite 3800
Fort Worth, Texas 76102
Telephone:  (817) 336-9333
Facsimile: (817) 336-3735